(27 Misc. Rep. 734.)

### PEOPLE ex rel. SHIELDS v. SCANNELL.

(Supreme Court, Special Term, New York County. June, 1899.)

1. GREATER NEW YORK—VETERANS' ACT—ABOLITION OF OFFICE—DISCHARGE.
Under Laws 1898, c. 184, amending the veterans' act, and providing that in cities of the first class, if a position held by an honorably discharged soldier shall become unnecessary, or be abolished, he shall not be discharged from the public service, but shall be transferred to any branch of the service for duty in such position as he may be fitted to fill, receiving the same compensation therefor, the absolute discharge of a veteran from the position of assistant secretary in the fire department of the borough of Manhattan, New York City, in which he was receiving $3,000 per annum, is illegal, where three additional clerks were soon after employed at annual salaries of $2,500, $2,400, and $2,000, respectively, and he was qualified to fill any of the new positions.

2. SAME—CIVIL SERVICE—RIGHT TO HEARING.
An assistant secretary of the fire department of the borough of Manhattan, New York City, holding a competitive position under the civil service rules, before he is discharged is entitled to have the reasons for his removal stated in writing, and filed, and a hearing thereon afforded him, as provided by Laws 1898, c. 186, § 3.

Application by John R. Shields for a peremptory writ of mandamus. Granted.

C. J. G. Hall (Uriah W. Tompkins, of counsel), for relator.

John Whalen, Corp. Counsel, and Charles Blandy and William B. Crowell, Asst. Corp. Counsel, for respondent.

CHESTER, J. The relator seeks a peremptory writ of mandamus to compel the defendant to restore him to a position formerly occupied by him in the public service in the fire department in the city of New York. He is a veteran of the United States army in the Civil War. He was appointed a clerk in this department in 1873, and continued to serve in various clerical positions therein down to the time of his removal on the 1st of April, 1898. At that time he was occupying the position of assistant secretary at a compensation of $3,000 per annum. He was on that day served with the following notice:

"Headquarters of Fire Department of the City of New York.

"Office of the Fire Commissioner.

"New York, April 1, 1898.

"Special Orders.

"No. 52 (extract).

"The position of assistant secretary in this department, borough of Manhattan, is hereby abolished from 4 o'clock this p. m., and the services of John R. Shields, the incumbent thereof, no longer required.

"By order of John J. Scannell, Commissioner.

"Augustus T. Docharty, Secretary."

On this removal, no charges of any kind were made against the relator, no hearing had as to the cause of his removal, and no reason given by the respondent for the discharge other than is stated in the notice above given. The position held by him was not that of private secretary, chief clerk, or deputy of any official or department, or to any other person holding a strictly confidential relation

to the appointing officer. The relator insists that his discharge was unlawful, and that he is entitled to be restored to the position. He bases his claim upon chapter 184, Laws 1898, amending the veterans' act, and chapter 186, Laws 1898, amending the civil service law. There has been much controversy as to whether or not these amendments to the state law apply to the city of New York, but it has now been determined that they do apply to that city. People ex rel. Fleming v. Dalton, 158 N. Y. 175, 52 N. E. 1113; People ex rel. Tate v. Dalton, 158 N. Y. 204, 52 N. E. 1119. This case must be determined, therefore, with reference to the state law as found in the amendments of 1898. Prior to the amendments, veterans were protected from removal "except for cause shown after a hearing had." The amendment to the veterans' act provided that:

"In cities of the first class, if the position so held by any such honorably discharged soldier, sailor or marine or volunteer fireman shall become unnecessary or be abolished for reasons of economy or otherwise, the said honorably discharged soldier, sailor or marine, or volunteer fireman holding the same shall not be discharged from the public service, but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor."

Even if it be conceded that the attempted removal and the alleged abolishing of the position occupied by the relator was made by the respondent in good faith, for reasons of economy or otherwise, yet we have in this amendment express prohibition of a discharge from the public service in such a case. The language of the statute is entirely plain, and provides that the said honorably discharged soldier shall not be discharged from the public service, but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor. It appears, under the proofs in this case, that the duties performed by the relator were distributed for a time among various other clerks in the office; that on the day of the alleged discharge another clerk was appointed at a salary of $2,400, and soon thereafter two other clerks were appointed,—one with a salary of $2,500, and one at a salary of $2,000,—and that some of the relator's duties were discharged by one or the other of these new clerks. The testimony is sufficient to convince me that the relator was fitted to fill any of the positions to which these several clerks were assigned. Even though it may be that but a portion of the duties which the relator had performed now devolve upon these new clerks, yet the fact that the necessities of the public service arising from the consolidation of several municipalities under the Greater New York charter, or otherwise, required so many new clerks so soon after the relator's dismissal, is quite convincing proof that the prohibition contained in the statute with reference to discharging a veteran from the public service would not have worked any injustice to the municipality in the present instance if the respondent had not attempted his discharge, but had transferred him to one of the positions now filled by others; and I think the respondent was bound to offer the first of these positions to this relator if he were willing to work for the salary fixed for the position, and, if not, that the re-

spondent could have adjusted the salary to meet the requirements of the statute. I choose, however, to put my decision upon the ground that the discharge in this case was prohibited by the express terms of the statute, and not upon the question as to whether or not the respondent acted in good faith in making the dismissal. So, also, when we look to the amendment of 1898 to the civil service act, it appears that this removal has been made in violation of the amendment. The relator was a clerk holding a competitive position in the fire department, and he was entitled to have the reasons for his removal stated in writing, and filed, and an opportunity afforded to him to explain. Laws 1898, c. 186, § 3. The evidence is clear that no such opportunity was afforded him, but that he was removed summarily.

It is urged by the respondent that the veterans' act does not protect an incumbent of a position when it has been abolished for lack of work or for reasons of economy, and many cases are cited in support of that principle. These cases, however, were all decided prior to the amendment of the veterans' act in 1898. That amendment makes a modification of the principle decided in these cases, and expressly provides for the protection of veterans in cases of that kind in cities of the first class. So I think that the cases cited, modified as they are by the amendment, will not serve to protect the respondent in his attempted removal of the relator. I think that he was unlawfully removed, and that he is entitled to the peremptory writ of mandamus he asks for, commanding the defendant to restore him to the public service. Mandamus granted as prayed for, with costs.

Mandamus granted, with costs. ·